# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LLOYD BRUCKERHOFF, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL ) <br> Acting Commissioner of Social Security,[1] ) <br> ) <br> Defendant. ) | Case No. 4:15-cv-01730-NCC |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Lloyd Bruckerhoff ("Plaintiff"), a now-55 year-old resident of Missouri, for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. No. 19) and Defendant has filed a brief in support of the Answer (Doc. No. 29). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. No. 14).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB, which was initially denied on September 16, 2013. (Tr. 100-104; 88-96). The initial denial was accompanied by a Disability Determination Explanation signed by single decision maker ("SDM") Kimberl Underwood (Tr. 88-96). Plaintiff then filed a written Request for Hearing before an Administrative Law Judge ("ALJ") on

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

September 30, 2013 (Tr. 105). A hearing was then held on September 19, 2014 in front of ALJ Carol L. Boorady. (Tr. 24-87). On September 25, 2014, the ALJ issued a written decision in which she found Plaintiff not disabled. (Tr. 9-19). Plaintiff requested a review of the decision by the Appeals Council on October 6, 2014. (Tr. 5). The Appeals Council denied Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and had not engaged in substantial gainful activity since March 29, 2013. (Tr. 11). The ALJ found Plaintiff has the severe impairments of "degenerative disc disease of the lumbar spine, osteoarthritis of the knees (worse on the right side), obesity and diabetes mellitus" but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 11-13).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). (Tr. 13). Specifically, she found that Plaintiff retained the capacity to occasionally lift up to 20 pounds, frequently lift up to ten pounds, walk or stand for six hours of an eight-hour workday, and sit for six hours in an eight-hour workday. *Id.* The ALJ further determined that Plaintiff could perform work that required minimal ("defined as less than occasional") or no stooping, kneeling, crouching, crawling or climbing on ramps or stairs. *Id.* Finally, the ALJ stated that Plaintiff should avoid exposure to vibration, unprotected heights and dangerous moving machinery. *Id.*

2

At the hearing, the ALJ used this RFC and variations upon it to pose hypothetical questions to Carly Cochran, a vocational expert, regarding the availability of jobs for someone similarly limited. (Tr. 58-83). Specifically, the ALJ asked Ms. Cochran whether there were jobs which Plaintiff could perform, given his age, education, and work experience, combined with the RFC described above and variations such as only standing four hours a workday or no stooping or kneeling. Ms. Cochran answered that there were such jobs, and based on the RFC as formulated, Plaintiff was able to perform jobs such as cashier. (Tr. 60). She further testified as to how many jobs in those categories existed at that time, both nationally and in Missouri. *Id.*

In her decision, the ALJ found Plaintiff unable to perform any past relevant work as a carpenter. (Tr. 17). However, the ALJ did find that there are jobs that exist in significant numbers in the national economy that he can perform, including the above-mentioned "cashier", which Ms. Cochran testified were available at a rate of 30,000 jobs in the State of Missouri and 1.3 million jobs nationally. (Tr. 18, 60). Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 18-19).

Plaintiff has come to this Court to appeal this ruling, arguing that the ALJ "failed to properly evaluate opinion evidence" (primarily in discounting the medical source statement of treating physician Jeremy Talley, DO). (Doc No. 19 at 3). He also alleges that the ALJ "failed to properly consider credibility" of Plaintiff's allegations regarding his subjective limitations. (*Id.* at 13). For the following reasons, the Court finds that the ALJ's determination was supported by substantial evidence. Plaintiff was not fully credible as to his subjective pain complaints, as evidenced by the general lack of corroboration by objective diagnostic testing, Plaintiff's own testimony of his activities, including his delay or unwillingness in seeking anything more than the most basic medical treatment, and his efforts to seek employment after the alleged date of

onset. The Court further finds that the ALJ's discounting of the weight of Dr. Talley's opinion was supported by substantial evidence, as Dr. Talley's opinion was based largely upon Plaintiff's subjective reports which the ALJ found not fully credible.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

4

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

**A. Background and the Record.**

The essence of Plaintiff's claim of disability is that his lumbar pain, knee pain, obesity and diabetes, combined with his age, education and work experience, prevent him from engaging in any sort of gainful employment. There were also two medically-determinable mental impairments considered by the ALJ (depression and anxiety) but determined that these issues

6

were being appropriately controlled and cause no more than mild limitation and are, therefore, nonsevere. (Tr. 12). Although Plaintiff mentions in passing in his brief that he has been seen three times by a licensed clinical social worker for major depressive disorder (Doc. No. 19 at 8-9), he does not allege that the ALJ erred in deeming these limitations nonsevere.

Plaintiff alleged an onset date of March 29, 2013 for his disability. (Tr. 151). Plaintiff finished high school in 1979 and became an apprentice union carpenter in or around 1983. (Tr. 30). He had no additional education. *Id.* Plaintiff testified that he was working in his normal trade as a carpenter up until the job finished. (Tr. 45-46). He testified that while on that final job, he noticed he was hurting too much to help unload trucks, walk around the jobsite or perform other basic tasks of his trade. (Tr. 45). Plaintiff stated that his pain was a long-term issue, but that it was on that job that he "finally gave in, I guess." *Id*. He explained that he ceased working after that job because "they didn't have another place to send us at that time." (Tr. 46). He then testified that he continued to call in (presumably to his union) to attempt to find "light duty" work for approximately two months. *Id.* The record reflects that Plaintiff received unemployment assistance payments in both the second and third quarters of 2013, after the alleged date of onset of disability. (Tr. 164).

The medical records submitted in this matter are relatively straight-forward. On January 24, 2012, Plaintiff was seen by Dr. Talley at Southwest Medical Associates. (Tr. 230). During that visit, Plaintiff does not appear to have complained of any back or knee pain, and is said to have described himself as feeling "good." *Id.* Similarly, the chart notes from February 13, 2013 make no mention of any back or knee pain. (Tr. 231).

On April 3, 2013, several days after the alleged onset date of the disability, Plaintiff was again seen by Dr. Talley, this time stating that he had chronic back pain which had been going on

7

for approximately 10 years. (Tr. 229) The chart notes also reflect that Plaintiff told Dr. Talley that he was "trying to get disability." *Id.* Dr. Talley ordered an MRI and x-ray of Plaintiff's lumbar spine to evaluate potential causes. *Id.*

The MRI of Plaintiff's lumbar spine revealed mild mid-lumbar levoscoliosis, epidural lipomatosis with tapering of the thecal sac throughout the lumbar spine, central spine canal stenosis (moderate between the L3 and L4 vertebrae, severe between L4 and L5), a paracentral disc herniation between L3 and L4, slight disc herniation between L4 and L5, multilevel foraminal stenosis ranging from mild at the top to severe at the bottom, and multilevel hypertrophic facet arthropathy. (Tr. 232-233). The x-ray resulted in an impression of moderate facet arthropathy from L3 to S1, degenerative disc disease (mild from L3 to L5, moderate between L5 and S1) and a slightly convex left spinal curvature centered around the L3 vertebra. (Tr. 234).

Plaintiff was then seen by James T. Merenda, M.D., at Comprehensive Spine Services. (Tr. 244-251). Dr. Merenda says that Plaintiff reported having lower back pain for about 20 years, and that it "comes and goes." (Tr. 250). Dr. Merendrea also notes that Plaintiff had been "on a farm tractor all day yesterday helping bale hay and has had a lot of back pain since that time." *Id.* Dr. Merendra noted the findings of the x-ray and MRI and explained his reasoning for eschewing surgery at that time, as it would likely accelerate problems elsewhere in Plaintiff's back. He then prescribed an epidural steroid injection for the pain and a program of exercise to ease the strain caused by excessive weight. (Tr. 251).

On July 16, 2013, Plaintiff was apparently seen at Mercy Hospital, although the records do not indicate the cause. A note in Plaintiff's file states that Plaintiff had not had an epidural steroid injection and indicated that bedrest and NSAIDs helped. (Tr. 254- 255).

On January 16, 2014, Plaintiff saw Dr. Talley for knee pain, in both knees but worse on the right. (Tr. 265). He also noted depression and anxiety about work and money. *Id.* This appears to be the first mention of knee pain. X-rays showed mild/moderate osteoarthritis of the right knee and mild joint height loss involving the lateral tibial compartment of the left knee, but with no significant arthritic changes. (Tr. 268-269). On January 22, 2014, Dr. Talley performed an injection on the right knee (Tr. 263).

On February 12, 2014, Plaintiff was seen by Dr. John Moore, M.D., who performed an epidural steroid injection at the L5-S1 level as an outpatient procedure. (Tr. 295-325). Prior to the procedure, Plaintiff was having pain with lumbar extensions of 20 degrees. (Tr. 300). On March 6, 2014, a second epidural steroid injection was administered by Dr. Moore. (Tr. 326-357). In the preoperative notes, Plaintiff stated that he received approximately 80 to 90 percent relief for approximately two weeks, but that he was back to having pain with lumbar extensions of greater than 20 degrees. (Tr. 332-333).

On May 27, 2014, Plaintiff saw Dr. Craig Meyer, M.D., at the Columbia Orthopedic Group. (Tr. 287-291). Dr. Meyer's report reflects Plaintiff's stating that the second epidural steroid injection did not alleviate the back pain. (Tr. 290). Plaintiff denied any radicular pain, and apparently did not mention anything about knee pain. *Id.* Dr. Meyer reiterated Dr. Merenda's opinion that Plaintiff was not a good surgical candidate, although he based this conclusion on Plaintiff's weight and the relatively low success rate of spinal fusion surgery for low back pain. *Id.* Dr. Meyer prescribed a weight loss regimen and physical therapy to strengthen Plaintiff's core. *Id.*

The final medical record in the transcript is Plaintiff's visit to Dr. Talley on July 23, 2014, for the purpose of discussing his medications and to "go over paperwork." (Tr. 261). Presumably

this refers to the medical source statement questionnaires Dr. Talley sent to Plaintiff's counsel shortly thereafter. At this examination, Dr. Talley noted Plaintiff's statements regarding the level, duration and nature of his pain, as well as his account of his past treatment. *Id.* He also noted that Plaintiff reported the pain flares with activity "even using riding lawnmower." *Id.*

Parallel (and possibly intertwined) with the pain issues was Plaintiff's mental state. Plaintiff saw Ms. Lizabeth L. Werner, a licensed clinical social worker, on three occasions and the only chart notes are dated March 20 and April 8, 2014. (Tr, 281, 283-284). The notes and letters to Plaintiff's counsel are consistent with those of Plaintiff's other health professionals which is he suffers from depression and anxiety, largely linked to his declining physical health and concerns about money. (Tr. 281-284). Ms. Werner also noted that the Lexapro (escitalopram) seemed to be helping. (Tr. 284). Ms. Werner refused to fill out the questionnaire sent to her by Plaintiff's counsel, as she "[did] not feel that most of the questions apply to your client because of their nature regarding serious mental impairment." (Tr. 281).

### B. Credibility

The Court will first consider the ALJ's credibility analysis and determination, as the evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. "Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) *See also Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[Plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (*citing Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating

and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). ALJs need not explicitly discuss each *Polaski* factor. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (*citing Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir.2005). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The Court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

The ALJ found that although Plaintiff's medically-determinable impairments could be expected to cause the symptoms he claims, the statements he made concerning the intensity, persistence and limitations on function from these impairments were "not entirely credible." (Tr. 16). Specifically, she found that his activities of daily living were not consistent with Plaintiff's claim that the pains in his back and legs are so severe as to be disabling. *Id.* He testified that (contrary to his own treating physician's opinion described below) that he likely could not stand for 30 to 45 minutes at a stretch in a workday, as "after a minute or two of standing, I've got to sit down usually." *Id.* However, in the Function Report he filled out, Plaintiff stated that he lives alone and can care for himself, fix his own meals, do the dishes (although he avoids dishes as much as possible by using paper plates), perform light cleaning, drive and shop several times per

11

week. (Tr. 206-209). At the hearing, he testified that shopping actually "feels pretty good," since he can stand and walk while leaning on the shopping cart. (Tr. 44). Every weekend he is able to see friends and on at least some occasions goes out to eat. (Tr. 210). Plaintiff testified that he walked half a mile after his car got a flat tire, and probably could do so every day if he "forced" himself. (Tr. 44). He was also able to assist his brothers with farm work whenever they asked, notably in June of 2013, when he operated a tractor all day to haul bales of hay.[2] (Tr 50-53, 250). It is significant that this episode, dated June 3, 2013 based on a medical record from the next day (Tr, 250), came a little over two months after Plaintiff claims he was totally disabled. The ALJ concluded that these activities suggest that he has at least some of the physical, mental and social capabilities needed for employment, thereby making his claim that he is totally disabled less credible. (Tr. 17).

The ALJ also examined his work history, which reflected fairly steady work and earnings and suggested a good motivation to work. (Tr. 17). However, she also noted that Plaintiff continued to hold himself out as ready, willing and able to work after the alleged onset date, both in his active attempts to get employment (albeit at a lighter duty level) and as part of his application for (and acceptance of) unemployment benefits during the second and third quarters of 2013. *Id.* This inconsistency with a claim of total disability supports the ALJ's finding that Plaintiff's subjective claims of pain were not wholly credible. *See Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) ("Applying for unemployment benefits adversely affects credibility, although it is not conclusive, because an unemployment applicant must hold himself out as available, willing and able to work.").

---

[2] The parties debate the significance of this activity, and even appear to have different interpretations of what precisely Plaintiff was doing, based on a fragmentary response of "just using your hands". (Tr. 51). Based on context, it appears that Plaintiff was stating that he could operate the machinery using only his hands, and not that he hand-baled the hay. This appears to have been the ALJ's interpretation.

An ALJ may not disregard subjective allegations solely because they are not fully supported by objective medical evidence, but may afford them less weight if inconsistencies exist in the record as a whole. An ALJ is "entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002)(*citing* 20 C.F.R. §§ 404.1529(c) & 416.929(c)). As described below, the ALJ also found that Plaintiff's medical treatment and records were somewhat inconsistent with his subjective reports of pain (especially as reflected in Dr. Talley's opinions), causing her to discount those reports and opinions based on them.

The Court finds that the ALJ's finding that Plaintiff was not fully credible in his reports of subjective symptoms was supported by substantial evidence. Plaintiff's accounts of the activities he repeatedly engages are "good reasons" why a reasonable ALJ would doubt the total disability which Plaintiff claims, and the ALJ's decision on credibility is therefore entitled to deference.

### C. Dr. Talley's Opinions

Plaintiff asserts that the ALJ erred in discounting the opinion of Dr. Talley, Plaintiff's treating physician, in formulating the RFC. However, the ALJ provided adequate explanation for why she accorded Dr. Talley's opinions only partial weight, and is thus is entitled to deference by this Court.

A disability claimant's RFC is the most he or she can do despite his or her limitations. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009). "[A]n RFC determination must be based on a claimant's ability 'to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" *McCoy v. Astrue,* 648 F.3d 605, 617 (8th Cir.2011) (*quoting Coleman v. Astrue*, 498 F.3d 767, 770 (8th

13

Cir.2007)). An ALJ bears "the primary responsibility for determining a claimant's RFC" and may take into account a range of evidence, from personal observation to the claimant's statements regarding his or her daily activities, but "because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). Further, an RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Gordon v. Astrue,* 801 F. Supp. 2d 846, 861 (E.D. Mo. 2011)(quotation omitted). This is not to say that each statement of a component of the RFC must be followed by a specific recitation of which records support that finding, but there must be some "narrative bridge" to allow review of what caused the ALJ to decide how the medically-determinable impairments manifest in the claimant's ability to perform work functions.

The opinion of a treating physician is accorded "special deference under the social security regulations" and is "normally entitled to great weight." *Vossen*, 612 F.3d at 1017. However, such an opinion does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) (citation omitted).

Dr. Talley provided his opinion of Plaintiff's RFC in the form of a Physical Residual Functional Capacity Questionnaire, dated August 1, 2014. (Tr. 273-277). Dr. Talley provided his diagnosis of degenerative disc disease of the lumbar spine, manifesting as decreased mobility, pain in the lower back and limitations on his "ability to perform activities," rating the pain as "moderately severe" and the prognosis as "fair." (Tr. 273). Interestingly, he describes Plaintiff's spine as "tender to palpations of lumbar spine," which is inconsistent with Dr. Meyer's statement

14

of two months earlier that Plaintiff's back did not show any tenderness to palpation. (Tr. 273, 290). Dr. Talley also notes clinical findings of decreased range of motion, notably for bending to the side, rotating and lumbar extensions. (Tr. 273). He also stated that Plaintiff's pain was frequent and severe enough to interfere with his attention and concentration. (Tr. 274). This stands in contrast to Plaintiff's own statement that he can concentrate for as long as he wants. (Tr. 211). Dr. Talley further opines that Plaintiff can stand for 15-20 minutes at a stretch, but then must usually lie down, whereas Plaintiff testified that he can (and must) sit after standing for any length of time. (Tr. 274, 43). Plaintiff also testified that he does not generally have problems sitting, while Dr. Talley has him restricted to 30-45 minutes sitting at a time, totaling about two hours total during the course of the work day. (Tr. 48, 274). Dr. Talley also suggested that Plaintiff is limited to rarely (1-5 percent of an eight-hour work day) in terms of twisting, stooping, crouching, climbing ladders and climbing stairs. (Tr. 276).

In the Decision, the ALJ discussed her reasons for not giving full deference to Dr. Talley's opinion. (Tr. 16) The ALJ did a thorough job in reviewing the medical records and noting the findings of the health professionals, as well as statements by Plaintiff of his condition as reflected in those records. She notes that Dr. Talley's medical source statements appear to rely "quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." *Id.* An ALJ may properly discount a treating physician opinion insofar as it relied on Plaintiff's subjective complaints. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("The ALJ was entitled to give less weight to [the physician]'s opinion, because it was based largely on [claimant]'s subjective complaints rather than on objective medical evidence."). Such an opinion

would be given even less weight if, as here, the ALJ has found the claimant's subjective reports to be less than fully credible.

To the extent the ALJ did find Dr. Talley's opinion entitled to some weight, she appears to have incorporated it into both the final RFC in the decision and the hypothetical RFCs used in questioning the vocational expert. Notably, the ALJ posited several variations on the postural limitations (stooping, crouching, etc.) which Dr. Talley raised and were also noted on Dr. Moore's pre-procedure notes (i.e., limitation at 20 degree extension of the lumbar spine).

Further, the ALJ noted that Dr. Talley's statements were not wholly consistent with the body of medical records and Plaintiff's own descriptions of his regular activities. For example, the restrictions posed by Dr. Talley suggest that Plaintiff cannot perform actions that he does in fact do, including grocery shopping (too much walking and standing), helping his brothers with farm work by operating a tractor when they ask (no sitting for prolonged periods), and driving for the 60 miles it took to reach the hearing. Plaintiff testified that he walked half a mile after his car got a flat tire, and probably could do so every day if he "forced" himself. (Tr. 44). The disconnect also exists in some basic places between Dr. Talley's opinion and the examinations of Drs. Meyer and Merenda, such as whether Plaintiff's lumbar spine was tender to palpation, a basic diagnostic indicator. Dr. Merenda does not note any tenderness, while Dr. Meyer specifically notes the lack of tenderness two months before it reappears in Dr. Talley's examination prior to writing his opinion form. As a result, the ALJ was entitled to give Dr. Talley's statements less than controlling weight where she found inconsistencies.

Inconsistencies between Dr. Talley's opinion and the remainder of the evidence in the matter, both medical and from Plaintiff's own statements, were sufficiently good reasons for the ALJ to not accord that opinion controlling weight. The ALJ's formulation of Plaintiff's RFC appears to

have incorporated evidence from across the record, and there is substantial evidence supporting the determination memorialized in the decision.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 20th day of March, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE